IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| FRANCISCO MENDOZA and JUANA VALENCIANO, <br><br> Plaintiffs, <br><br> vs. <br><br> DAIRYLAND INSURANCE COMPANY, <br><br> Defendant. | Case No.  1:18-CV-0362-SWS-MLC |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendant's *Motion for Summary Judgment* (ECF No. 22).  The Court, having considered the briefs and materials submitted in support of the motion and Plaintiffs' response thereto, and being otherwise fully advised, FINDS and ORDERS as follows:

### BACKGROUND

This case arises out of injuries Plaintiffs allegedly suffered from an assault that occurred in the parking lot of the Fire Rock Casino in Church Rock, New Mexico.  Just before 9:00 p.m. on March 12, 2012, Plaintiffs drove their PT Cruiser to the casino and parked in the fourth row of the casino's parking lot.  Plaintiff Francisco Mendoza got out of the automobile, while his wife, Plaintiff Juana Valenciano, remained inside looking for her casino card in the glove compartment.  (Def.'s Ex. B, Denise Begaye Aff. ¶ 3;[1] Def.'s

---

[1] Plaintiffs object to consideration of ¶ 3 of Investigator Denise Begaye's Affidavit, arguing the assertions made therein are unreliable and inadmissible hearsay.  Plaintiffs' objection is overruled.  The Court can reasonably conclude the

Ex. A, Valenciano Dep. 27:5-24.)  While Mr. Mendoza was standing outside the PT Cruiser waiting for his wife, he noticed a dark-colored vehicle ("the vehicle") stop in the driving lane behind them, while the front seat passenger got out.  (Valenciano Dep. 28:9-24; Def.'s Ex. D, Denise Billy Dep. 10:8-23; Mendoza EUO 20:20-24, 22:7-9, ECF No. 28-1.)  The vehicle momentarily stopped between parking rows three and four while the passenger exited the vehicle.  (Billy Dep. 17:8-10; Def.'s Ex. F, Fire Rock Casino Surveillance Video at PTZ Park East Row 1 South (2) 20:45:38-42.)  The vehicle's passenger then walked toward the back of the vehicle as it drove away.  *Id*. at 20:45:41-46.  After dropping off the passenger, the vehicle's driver then drove to a different lane within the parking lot between rows two and three and waited there.  (Billy Dep. 12:8-19, 17:10-11; Surveillance Video at PTZ Park East Row 5 North (2) 20:45:49-20:46:00.)

After exiting the dark-colored vehicle, the passenger approached Mr. Mendoza on foot and demanded money from Mr. Mendoza while threatening to shoot him.  (Begaye Aff. ¶ 3; Billy Dep. 10:24-11:1; Mendoza EUO 22:20-22, 23:13-17, 24:9-11.)  When Mr. Mendoza did not comply with the demand, the passenger-turned-assailant then shot Mr. Mendoza in the face below his left eye with a BB gun.  (Begaye Aff. ¶ 3; Billy Dep. 11:1-6.)  After being shot, Mr. Mendoza got back into the driver's seat of the PT Cruiser to shield his wife from the attack.  (Begaye Aff. ¶ 4; Billy Dep. 11:11-15.)  After hearing several more "pops" and the driver's side window shatter, Mr. Mendoza saw the assailant

---

source of the information relayed in ¶ 3 was Mr. Mendoza, and such statements are not hearsay as an opposing party's statements.  *See* FED. R. EVID. 801(d)(2).  That the source is Mr. Mendoza is corroborated by the statements attributed to Mr. Mendoza during the investigator's deposition, wherein she discusses her questioning of Mr. Mendoza inside the casino on the night of the assault.  (*See* Def.'s Ex. D, Billy Dep. 9:14-12:2.)  Additionally, the Affidavit is admissible as a public record.  *See* FED. R. EVID. 803(8)(A)(iii) & (B); *Perrin v. Anderson*, 784 F.2d 1040, 1046-47 (10th Cir. 1986); *Weinstein v. Siemens*, No. 2:07-CV-15000, 2010 WL 4825016, at *2-4 (E.D. Mich. Nov. 22, 2010.)

run through the parking lot and re-enter the dark-colored vehicle which was waiting on the other side of the parked vehicles. (Begaye Aff. ¶ 4; Billy Dep. 11:16-12:2.) The dark-colored vehicle then fled the scene as Mr. Mendoza and his wife ran to the entrance of the casino. (Begaye Aff. ¶ 4; Surveillance Video at PTZ Park East Row 1 South (2) 20:46:14-40, Driveway (2) 20:46-18-22.) The Plaintiffs reported the incident to casino security and Plaintiff Mendoza was questioned by Investigator Denise Begaye shortly thereafter. (Begaye Aff. ¶¶ 2, 4; Billy Dep. 9:14-21.) A subsequent investigation revealed the identity of the assailant and driver of the dark-colored vehicle (Begaye Aff. ¶¶ 5-20), and the assailant was ultimately convicted of assault with a dangerous weapon (Def.'s Ex. C).

At the time of the shooting, Plaintiffs were insured under Dairyland automobile policies providing uninsured motorist ("UM") coverage. Following the shooting, Plaintiffs presented claims to Defendant Dairyland claiming their injuries were the result of an assault by an uninsured motorist. Following denial of their claims, Plaintiffs filed this action on March 9, 2018. (*See* ECF No. 1-1.) Plaintiffs' complaint asserts the following claims for relief: declaratory judgment for UM benefits pursuant to Rule 1-057 NMRA and NMSA § 44-6-1 (1978) *et seq.*; breach of contract for UM benefits; bad faith breach of insurance contract for denial of UM benefits; violation of New Mexico Insurance Practices Act; and violation of New Mexico Unfair Practices Act. Plaintiffs seek, *inter alia*, a judgment declaring that the March 12, 2012 shooting was a covered event under the Dairyland policy(ies) and that Defendant is therefore obligated under the policy(ies) to pay UM benefits to Plaintiffs. By way of its summary judgment motion, Defendant seeks a declaration that Plaintiffs' injuries resulting from the assault are not covered by the Dairyland policy because they did not arise out of the use of an uninsured motor vehicle.

**STANDARD OF REVIEW**

Summary judgment is appropriate where a movant shows "there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (2010) (emphasis added). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal quotations and citations omitted). In reviewing a motion for summary judgment, the Court is to determine whether there is evidence to support a party's factual claim, *Jarvis v. Potter*, 500 F.3d 1113, 1120 (10th Cir. 2007), and, in doing so, must view the evidence and draw reasonable inferences therefrom in a light most favorable to the nonmoving party, *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).[2]

**DISCUSSION**

"[I]n a federal diversity action, the district court applies state substantive law—those rights and remedies that bear upon the outcome of the suit—and federal procedural law—the processes or modes for enforcing those substantive rights and remedies." *Los Lobos*

---

[2] "[A] surveillance video can be dispositive of factual disputes regarding how [an] incident occurred." *Safford v. Wal-Mart Stores, Inc.*, No. 1:16-cv-216 WJ-KK, 2017 WL 2306410, at *4 (D.N.M. Feb. 16, 2017). *See, e.g., Scott*, 550 U.S. at 380 (where videotape "utterly discredited" respondent's version of events, appellate court erred in finding there was a genuine issue of fact preventing summary judgment); *Lewis v. Sandoval*, 428 F. App'x 808, 811 (10th Cir. 2011) (where police recording "unequivocally" established a pursuit took place, appellant's claim that no pursuit occurred did not create an issue of fact preventing summary judgment).

*Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659, 668 (10th Cir. 2018). Pursuant to New Mexico's uninsured motorist statute, an insurer must indemnify an insured for damages that "arise out of the use of an uninsured motor vehicle." *Britt v. Phoenix Indem. Ins. Co.*, 907 P.2d 994, 997 (N.M. 1995) (citing N.M. STAT. ANN. § 66-5-301). In determining whether intentional conduct and its resulting harm arises out of the use of an uninsured motor vehicle, and thus potentially compensable under an uninsured motorist policy, the New Mexico Supreme Court applies a three-part test:  (1) whether there is a sufficient causal nexus between the use of the uninsured vehicle and the resulting harm; (2) whether an act of independent significance broke the causal link between the use of the vehicle and the harm suffered; and (3) whether the "use" to which the vehicle was put was a normal use of that vehicle. *Britt*, 907 P.2d at 999-1000; *see also State Farm Mut. Auto. Ins. Co. v. Blystra*, 86 F.3d 1007, 1011 (10th Cir. 1996). Defendant argues Plaintiffs' claims fail under the first two prongs of the *Britt* test.

      The causal nexus prong of the three-part test requires that the vehicle be an "active accessory" in causing the injury. *Britt*, 907 P.2d at 999. In *Blystra*, the Tenth Circuit Court of Appeals recognized that when an automobile is used to undertake a *drive-by* shooting (i.e., shot fired from *within* the *moving* vehicle), the automobile is almost by definition an "active accessory" to the assault. 86 F.3d at 1012. That is because, through the use of an automobile, a drive-by shooter achieves several advantages otherwise unavailable to him in the commission of the crime, such as using the vehicle to unsuspiciously and quickly approach his victim while concealing that he is armed with a gun, to help hide his identity, and to leave the scene quickly and avoid apprehension. *Id*. Conversely, where the assailant commits the tort after stopping and exiting the vehicle, "the vehicle serves merely to

transport the assailant to the scene of the crime and therefore is not an active accessory to the resulting injuries." *Id*. at 1013.

The United States Court for the District of New Mexico has also addressed the causal nexus requirement, recognizing that the uninsured vehicle must have been an active accessory in causing the harm. *Hartford Ins. Co. of the Midwest v. Tollardo*, 409 F. Supp. 2d 1301, 1308-09 (D.N.M. 2005). In *Tollardo*, the assailant used his uninsured vehicle to search for the victim, with the intent of beating him. *Id*. at 1303-04. After unsuccessfully searching for a couple hours, the assailant gave up and decided to return home. *Id*. at 1303. On his way, the assailant, by chance, spotted the victim's vehicle parked at a gas station and stopped quickly, crashing his vehicle into a pole. *Id*. at 1303-04. The assailant exited his vehicle and ran toward the victim's vehicle with a gun in each hand. *Id*. at 1304. As the assailant got closer to the victim's vehicle, he began to walk and opened fire on the vehicle, killing three of the occupants. *Id*. The assailant ran back to his vehicle and left the scene. *Id*. The court concluded there was not a causal nexus between the assailant's use of his vehicle and the shooting deaths of the three victims because his vehicle was not an active accessory to the crimes. *Id*. at 1308. In doing so, the court noted that Minnesota law (upon which the *Britt* court relied in adopting the three-part test) has "ruled out the mere use of a vehicle for transportation to the scene of a crime as satisfying the active accessory requirement." *Id*. at 1310. "[T]he Court sees no reason why transportation away from, but not to, the scene of a crime should render the vehicle an active accessory." *Id*.

Still, in *Blystra*, the Tenth Circuit acknowledged that the *Britt* court recognized the possibility that, *given the right facts*, the causal chain might not be broken even though the assailant commits the assault *after* exiting the stopped vehicle. 86 F.3d at 1014. The New

Mexico Court of Appeals found such facts to exist in *Barncastle v. Am. Nat'l Prop. & Cas. Co.*, 129 N.M. 672 (N.M. Ct. App. 2000). In *Barncastle*, the court addressed circumstances in which the use of the vehicle was "somewhat attenuated" from the assault. *Id*. At about 10:00 p.m., Barncastle was in his vehicle stopped at an intersection in Albuquerque, New Mexico, when an unidentified vehicle pulled up next to Barncastle's car and a passenger got out, walked over to Barncastle's window, and shot him with a handgun. *Id*. at 673. The assailant immediately thereafter returned to the unidentified vehicle, which then left the scene at a high rate of speed with its headlights off. *Id*.

Applying the *Britt* test, the New Mexico Court of Appeals determined the assailant's vehicle was an "active accessory" in the attack. *Id*. at 674. The court explained: "The driver of that vehicle used it to get into a position where [a]ssailant could get out and shoot Barncastle. . . . The vehicle was further used to escape the scene at a high rate of speed, with its headlights off." *Id*. The court further found: "No act of independent significance broke the causal chain. . . . Assailant left the passenger seat, shot Barncastle, and returned to the vehicle [which] left the scene before it or its occupants could be identified or apprehended." *Id*.

Relying on *Barncastle*, Plaintiffs argue the uninsured vehicle used in this case was an active accessory in the attack on Plaintiffs and, therefore, the assailant's use of the vehicle to harm Plaintiffs is covered under Plaintiffs' automobile insurance policy. The Court disagrees. This case's facts are distinguishable from those in *Blystra* and *Barncastle* and more akin to the facts in *Tollardo*. Here the assailant did not achieve the advantages of either a drive-by shooting or an attack at an intersection where traffic is momentarily stopped – i.e., use of the vehicle to covertly and quickly approach the victim or get into a

7

position where the assailant could shoot the victim, to conceal the identity of the shooter, as well as the presence of the gun, and to escape the scene at a high rate of speed and avoid apprehension.  *See Blystra*, 86 F.3d at 1012; *Barncastle*, 129 N.M. at 674.

First, the driver did not maneuver the vehicle to quickly appear alongside Mr. Mendoza without warning.  As shown on the video the Plaintiffs' assailant exited the vehicle and approached Mr. Mendoza on foot, without using the vehicle in any way to conceal his identity or the presence of a weapon. (Surveillance Video at PTZ Park East Row 1 South (2) 20:45:38-46).  Neither did the assailant use the vehicle to block Plaintiffs from leaving the scene.  The assailant then fled the scene on foot before re-entering the vehicle in another area of the parking lot.  Although the assailant ultimately used the vehicle to leave the scene more quickly than he could have had he remained on foot, the vehicle had lingered in the casino parking lot for several minutes prior to the assault (*see* Surveillance Video at PTZ Self Park Row 1 North and Row 3 North), something the assailant could have accomplished, likely more inconspicuously, without the use of the vehicle.  Indeed, because the perpetrators of this crime were ultimately identified through the vehicle's distinctive markings (*see* Begaye Aff. ¶¶ 6, 9-10), the vehicle served no purpose in helping the assailant avoid apprehension.  Use of the vehicle in this case did not facilitate the assault; rather, the vehicle merely facilitated transportation to and from the scene of the crime.  Thus, the Court finds the undisputed facts show that the uninsured vehicle was not an active accessory in causing the harm to Plaintiffs.  Because Plaintiffs cannot show a causal nexus between use of the uninsured vehicle and the resulting harm, the Court need not address the other two parts of the *Britt* test.  *See Britt*, 907 P.2d at 1000.

CONCLUSION

The undisputed material facts establish that Plaintiffs' alleged injuries did *not* arise out of the use of an uninsured automobile.  Accordingly, the Court finds Plaintiffs are not entitled to recover uninsured motorist benefits under the subject Dairyland insurance policy for the injuries they allegedly suffered during the assault in the parking lot of the Fire Rock Casino.  THEREFORE, IT IS HEREBY

**ORDERED** that Defendant's *Motion for Summary Judgment* (ECF No. 22) is GRANTED and Defendant is entitled to judgment as a matter of law.

Dated this  13th   day of December, 2018.

_____
Scott W. Skavdahl
United States District Judge